IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | |
| DONOVAN D. FRANK, | CASE NO. BK18-41022-TLS |
| Debtor. | CHAPTER 7 |
| COMMUNITY FIRST BANK, | ADV. NO. A18-4027-TLS |
| Plaintiff, | |
| vs. | |
| DONOVAN D. FRANK; TRACEY FRANK; and TOTAL LIVESTOCK, L.L.C., | **ORDER** |
| Defendants. | |

  This case came before the court for trial by video conference on June 23, 2020. Michael Samuelson and Robert Reynolds appeared for the plaintiff, and James Bocott appeared for the defendants. The parties submitted written closing arguments after the trial, and the matter is now ready for decision.

  The plaintiff filed this complaint seeking a declaration that the debtor, Donovan Frank, is a business partner to his non-debtor spouse, Tracey Frank, who owns Total Livestock, L.L.C. Because Donovan did not list this alleged partnership interest in his bankruptcy schedules or Statement of Financial Affairs, and declared under oath the schedules as filed were correct, the plaintiff wants the court to deny him a discharge from his debts under 11 U.S.C. §§ 727(a)(2) and (4).

  For the reasons that follow, the Court finds that Plaintiff has failed to meet its burden of proving the existence of a partnership between Donovan and Tracey by a preponderance of the evidence. Therefore, the request for a declaration regarding the existence of a partnership is denied, as is the request to deny a discharge.

  The plaintiff is a creditor by virtue of a 2011 default judgment entered against Donovan and his company Cattleplex, L.L.C., which remains unpaid. Donovan filed the underlying Chapter 7 bankruptcy case in June 2018. The plaintiff filed this adversary proceeding in September 2018, asserting that Donovan, whose businesses have involved the purchase, breeding, and sale of cattle, ensured that the assets of his successor business Total Livestock, L.L.C., were transferred to Tracey to shield them from creditors while he continues to run the day-to-day operations without compensation.

First, the plaintiff requests a declaratory judgment from the court finding that Donovan and Tracey have created a general partnership that includes all assets of Donovan, Tracey, and Total Livestock, and that Donovan owns at least a 50 percent interest in the partnership, which should have been included in his bankruptcy case.

The bank then asserts that because Donovan did not include the alleged partnership interest in his bankruptcy schedules, nor did he divulge them to the bankruptcy trustee, he should be denied a discharge under § 727(a)(2) because, with the intent to hinder, delay, or defraud a creditor or the trustee, he concealed property of the estate by failing to disclose his partnership interest on his bankruptcy schedules. The bank also asserts that Donovan should be denied a discharge under § 727(a)(4) because he knowingly and fraudulently, in or in connection with the case, made a false oath when he testified at the § 341 meeting that the bankruptcy schedules and Statement of Financial Affairs filed in his bankruptcy case were true and correct.

## *FACTUAL BACKGROUND*

The parties filed a stipulation (Fil. No. 31) as to undisputed facts as follows:

1. Plaintiff Community First Bank, formerly known as Farmers State Bank, is a banking corporation duly organized and existing under and by virtue of the banking laws of the State of Nebraska, with its principal place of business located in Maywood, Frontier County, Nebraska.

2. Defendant Donovan D. Frank, also known as Devin Frank, is a debtor in bankruptcy and was at all relevant times a resident of Cherry County, Nebraska, with an address of 89871 State Hwy. 97, Valentine, Nebraska 69201.

3. Defendant Tracey A. Frank was at all relevant times a resident of Cherry County, Nebraska, with an address of 89871 State Hwy. 97, Valentine, Nebraska 69201.

4. Tracey is Donovan's wife.

5. Defendant Total Livestock, L.L.C., is a Nebraska limited liability company with its principal place of business in Valentine, Cherry County, Nebraska.

6. By Order filed September 30, 2011, the plaintiff was awarded a monetary judgment against Donovan and Cattleplex, L.L.C, a Nebraska limited liability company, in Cherry County District Court (Case No. CI 11-37). A subsequent Order Nunc Pro Tunc was filed in Cherry County District Court Case No. CI 11-37 on October 28, 2011. Said judgment remains unpaid.

7. Donovan and Cattleplex were in the business of buying, breeding, and selling bred cattle for profit.

8. Donovan has experience relative to the business of buying, breeding, and selling livestock.

9. The property commonly known as 89871 State Hwy 97, Valentine, NE 69201 and consisting of approximately 51 acres ("the Property") was at all relevant times the primary residence of Donovan and Tracey.

10. In the spring of 2011, Donovan approached Dr. Bradley Rodgers, a veterinarian in Valentine, Nebraska, to inquire whether Dr. Rodgers would be interested in purchasing the Property, which included all improvements that were attached to the Property, such as corrals, a modular home, a trailer house, and one framed-up large house.

11. In the spring of 2011, Donovan and Tracey were residing in the modular home located on the Property and continued to reside therein after the sale to Dr. Rodgers was finalized in approximately April 2011. As part of the sale, Dr. Rodgers assumed from Donovan and Cattleplex the pasture and crop leases that were previously used to operate Cattleplex.

12. When the Property was sold to Dr. Rodgers, Donovan was hired by Dr. Rodgers as a full-time employee to manage Added Value, L.L.C., the limited liability company that was created by Dr. Rodgers.

13. Added Value was in the business of buying open cows, artificially inseminating them, and selling the bred cows for profit.

14. Added Value's business was carried out on the Property and on properties that were previously leased by Cattleplex and Donovan.

15. Tracey was hired by Dr. Rodgers as Added Value's bookkeeper.

16. While employed by Added Value, Tracey handled the day-to-day bookkeeping of Added Value just as she had done for Cattleplex while Cattleplex was in operation.

17. On approximately October 29, 2014, Tracey formed Total Livestock, L.L.C., a Nebraska limited liability company.

18. Total Livestock's business is also run on the same properties previously used by Cattleplex and Added Value.

19. On June 20, 2018, Donovan filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, which was docketed as Case No. 18-41022 before this court.

20. This adversary proceeding, No. A18-4027, arises under and is related to Donovan's bankruptcy case.

21. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334(b). Venue is proper in this court under 28 U.S.C. § 1409(a). This action is a core proceeding as defined in 28 U.S.C. § 157(b).

22. The plaintiff is a creditor of Donovan.

23. When Donovan commenced his bankruptcy case, a bankruptcy estate was created consisting of all of his property "wherever located and by whomever held." 11 U.S.C. § 541.

24. A trustee was thereafter appointed to administer Donovan's estate, take possession of the property in his estate, and facilitate the liquidation of the assets in the estate for the benefit of his creditors.

25. In order to facilitate the administration of his bankruptcy case, Donovan was required to file a truthful schedule of his assets and liabilities using the appropriate official forms.

26. On July 12, 2018, Donovan filed his schedules of assets and liabilities, more particularly described as Schedules A through J, in the bankruptcy case.

27. Donovan signed a declaration, dated July 12, 2018, declaring under penalty of perjury that he had read the schedules in the bankruptcy case and that the schedules were true and correct.

28. On July 12, 2018, Donovan also filed a Statement of Financial Affairs in the bankruptcy case.

29. Donovan signed a declaration, dated July 12, 2018, declaring under penalty of perjury that he had read the Statement of Financial Affairs in the bankruptcy case and that the Statement of Financial Affairs was true and correct.

30. After the bankruptcy case was filed, the meeting of creditors was held on July 26, 2018, pursuant to 11 U.S.C. § 341.

31. At the § 341 meeting, Donovan again verified the accuracy of the schedules and Statement of Financial Affairs. He testified under oath that the schedules and Statement were true and correct, identified all assets, and required no changes or additions.

In addition to the undisputed facts set forth in the stipulation of the parties, the evidence at trial established that while Donovan was working for Added Value, he received a regular paycheck as an employee. Donovan had complete control over the operations of Added Value. At some point after obtaining its judgment, Plaintiff began garnishing Donovan's paycheck. In the fall of 2014, Added Value sold its herd and, thereafter, Donovan no longer received a paycheck.

The evidence established that, in November of 2015, Dr. Rodgers sold the assets of Added Value to Tracey Frank. The purchase agreement was signed in July of 2015 by both Donovan and Tracey (as well as Cattleplex), but the conveyance documents went only to Tracey. Tracey asserts that Total Livestock, L.L.C., and the assets purchased from Dr. Rodgers belong solely to her. Donovan is listed as one of the borrowers on the initial loan used to complete the purchase from Dr. Rodgers.

Donovan testified in a deposition in 2016 that he helps out with the cattle when asked, but that the operation was run by Tracey and her brother as a hired hand. He said the only form of compensation he received for periodically helping out is that Tracey pays all the living expenses and also pays his child support obligation. Donovan does not receive a 1099, K-1, or W-2 from Tracy or from Total Livestock. Donovan and Tracey do file a joint tax return and when they do so, they have utilized carryover net operating losses that were incurred by Donovan Frank and Cattleplex in 2006, 2008 and 2010.

To be clear, the plaintiff does not assert any claims based on the purchase by Dr. Rodgers from Donovan and Cattleplex, or the operation of the business by Dr. Rodgers. Instead, the claims asserted arise solely out of the sale by Dr. Rodgers to Tracey and Total Livestock and the operations thereafter. Specifically, from the plaintiff's perspective, it believes that Donovan contributes substantial labor and expertise to the operation of Total Livestock without receiving a wage, and also contributes his net operating loss carryovers to help Tracey and Total Livestock avoid paying taxes. As such, the plaintiff asserts that Donovan and Tracy actually run Total Livestock together, as a partnership.

*DISCUSSION*

Because §727 applies only if I find that Donovan concealed or failed to disclose assets of the bankruptcy estate, the first question to be addressed is whether he and Tracey had formed a partnership such that he is in fact a co-owner of the partnership's assets. The plaintiff bears the burden of proving by a preponderance of evidence that a partnership exists. *Willson v. King (In re Dissolution & Winding-up of KeyTronics)*, 744 N.W.2d 425, 438 (Neb. 2008).

The Nebraska Uniform Partnership Act provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Neb. Rev. Stat. Ann. § 67-410(1) (West). The Uniform Partnership Act codifies and clarifies that "a partnership is created by the association of persons whose intent is to carry on as co-owners a business for profit, regardless of their subjective intention to be 'partners.' Indeed, they may inadvertently create a partnership despite their expressed subjective intention not to do so." Unif. P'ship Act (1997) § 202, cmt. 1. The parties' intent should be ascertained objectively, rather than subjectively, from all the evidence and circumstances. *KeyTronics*, 744 N.W.2d at 439-40, *S. Sioux City Star v. Edwards*, 357 N.W.2d 178, 180 (Neb. 1984).

The statute goes on to describe factors for the court to consider in determining whether or not a partnership has been formed:

>>(3) In determining whether a partnership is formed, the following rules apply:
>
>>(a) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property;
>
>>(b) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived; and
>
>>(c) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:
>
>>>(i) Of a debt by installments or otherwise;
>
>>>(ii) For services as an independent contractor or of wages or other compensation to an employee;
>
>>>(iii) Of rent;
>
>>>(iv) Of an annuity or other retirement or health benefit to a beneficiary, representative, or designee of a deceased or retired partner;
>
>>>(v) Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or
>
>>>(vi) For the sale of the goodwill of a business or other property by installments or otherwise.

Neb. Rev. Stat. Ann. § 67-410(3) (West).

>Being "co-owners" of a business for profit does not refer to the co-ownership of property, but to the co-ownership of the business intended to garner profits. . . . Co-ownership generally addresses whether the parties share the benefits, risks, and management of the enterprise such that (1) they subjectively view themselves as members of the business rather than as outsiders contracting with it and (2) they are in a better position than others dealing with the firm to monitor and obtain information about the business.

*KeyTronics*, 744 N.W.2d at 441 (footnotes omitted).

The Nebraska Supreme Court uses five common objective indicia of co-ownership: (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property. "The five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership." *Id.*

As to the element of contribution, the court said:

> The continuing investment of one's labor without pay is generally considered a strong indicator of co-ownership. . . . Valid consideration for an ownership interest in a partnership may take the form of either property, capital, labor, or skill, and the law does not exalt one type of contribution over another.

*Id.* at 442 (footnotes omitted).

The element of control-sharing "is elusive because of the many gradations of control and because partners often delegate decision-making power," *id.* (citation omitted), but consultation with each other about key aspects of the business and joint decision-making are evidence of control-sharing. *Id.*

The *KeyTronics* court also examined the importance of profit-sharing arrangements in determining whether a venture is co-owned:

> Of the five indicia of co-ownership, profit sharing is possibly the most important, and the presence of profit sharing is singled out in § 67–410(3)(c) as creating a rebuttable presumption of a partnership. However, what is essential to a partnership is not that profits actually be distributed, but, instead, that there be an interest in the profits.

*Id.* at 443 (footnotes omitted).

In examining whether property belongs to the purported partnership or to an individual, the court must look to what assets were used to acquire the property:

> (3) Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.
>
> (4) Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes."

Neb. Rev. Stat. Ann. § 67-412 (West).

In attempting to establish the existence of a partnership in this case, the plaintiff points to three things — (1) that Donovan was listed as a purchaser in the purchase agreement with Dr. Rodgers and was a joint borrower on the loan used to complete the purchase; (2) that Donovan helps with the operations of Total Livestock without compensation; and (3) that the carryover tax losses from Donovan's prior business are used in the joint tax return by Donovan and Tracy.

Unfortunately, neither Donovan or Tracey were called to testify at the trial. Instead, the evidence included transcripts of the deposition testimony of Donovan from November of 2011 and April of 2016, and the deposition testimony of Tracey from March of 2012 and April of 2016. There was also a transcript of Donovan's testimony in July of 2018 from the meeting of creditors in his bankruptcy case. As such, the Court was unable to observe and evaluate Donovan and Tracey as they were testifying.

At the meeting of creditors upon commencement of his bankruptcy case, Donovan testified that he had no involvement in Tracey's cattle operation or her construction business. He testified that she ran those businesses with her children. He testified that he last helped with the cattle business by helping sell some cows when it first started. He also testified that he is self-employed, doing some minor construction work on his own — separate from his wife's business. That testimony was consistent with his testimony in a deposition taken in April of 2016. In that deposition (which was within a year after Tracey purchased the assets from Dr. Rodgers), Donovan testified that he helps out with the cattle when asked and fielded phone calls and texts, but that the operation was run by Tracey and her brother as a hired hand. He said the only form of compensation he received for periodically helping out is that Tracey pays all the living expenses and also pays his child support obligation.

Importantly, Plaintiff did not produce any evidence to establish that Donovan "contributes substantial labor and expertise to the operation of Total Livestock" as it asserts in its brief. In fact, the only evidence that Donovan performed work for Total Livestock was his testimony from 2016 that he helps out when asked, but he did not quantify that work and a couple of years later testified at the § 341 meeting that he does not do work for Total Livestock.

The only other evidence was that he signed some cattle purchase/sale contracts over the years. Some of the contracts placed into evidence were from Donovan's time working for Added Value in 2014 and earlier.  The other contracts were signed in 2015 and early 2016.  None of the contracts with Donovan's signature are dated after April of 2016. Some of the contracts have Donovan's name on the header, while others have Tracey's name. Some are signed by both Tracey and Donovan. However, there was no evidence from the counter-parties to those contracts as to the extent of Donovan's involvement, nor was there any evidence as to the significance of those contracts to the overall operations of Tracey's business Total Livestock. Further, those contracts are consistent with Donovan's deposition testimony that he helped out when Tracey first started her business but was no longer involved after the first year. None of the contracts are dated after April of 2016 and this bankruptcy was filed in November of 2018.  The evidence that Donovan was involved in cattle purchases in 2015 and early 2016 does little to help determine the extent, if any, of his involvement in the business when the bankruptcy was filed in November of 2018.

As additional proof of the existence of a partnership, the plaintiff points out that Donovan and Tracey both signed the purchase agreement, loan documents, and real estate transfers in connection with the purchase of the Added Value business from Dr. Rodgers. However, Donovan's execution of such legal documents, in and of itself, is not indicative of a partnership. *See S. Sioux City Star v. Edwards*, 357 N.W.2d 178, 181 (Neb. 1984) (citing *Ogallala Fertilizer Co. v. Salsbery,* 184 N.W.2d 729 (1971) and stating that "the fact that a wife signs notes with her husband is not, without further explanation of the circumstances, determinative that a partnership

exists."). Further, regardless of the fact that Donovan was listed as a purchaser, the property was not conveyed to him at closing. Also, Tracey later refinanced the initial purchase loan with a new loan solely in her name. Finally, the use by Donovan and Tracey of loss carryovers from Donovan's prior business operations on their joint tax return is simply proper tax planning by a married couple. It is not indictive of a business partnership.

The plaintiff's argument is based primarily on assumptions and inferences rather than facts. Plaintiff is essentially asking the court to assume that Tracey could not conduct the business of buying, breeding, and re-selling cattle without substantial involvement by Donovan, who had a longer history of such activities. The court, however, cannot rely on assumptions and inferences. Instead, facts must be presented. As discussed above, the facts are lacking.

Plaintiff has failed to prove the existence of a partnership by a preponderance of the evidence. Therefore, Count I of plaintiff's complaint seeking a declaratory judgment as to the existence of a partnership is denied. Further, Counts II and III seeking denial of discharge are also denied as they are premised on the existence of a partnership under Count I.

Separate judgment shall be entered finding in favor of the defendants and dismissing the complaint.

IT IS ORDERED:

DATED: August 26, 2020

> BY THE COURT:
>
> /s/Thomas L. Saladino
> Chief United States Bankruptcy Judge

Notice given by the Court to:
\*Michael Samuelson
\*Robert Reynolds
 James Bocott
 United States Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.